16-1285

UNITED STATES COURT OF APPEALS
THIRD CIRCUIT

UNITED STATES OF AMERICA
                    Plantiff

v

RICHARD J. HARLEY
                    Defendant

Appellate Docket No.: 16-285
District Court #:3-12-cr-00224-001.

RECEIVED
JUN 14 2016
U.S.C.A. 3rd. CIR

---

DEFENDANT'S PRO SE MOTION TO REQUEST BOND ACCORDING TO
18 U.S.C. §3143(b)

---

### RELIEF SOUGHT

NOW COMES Richard J. Harley, Defendant, proceeding pro se in the above entitled matter, filing this Defendant's Motion to the U.S. Appellate Court for the Third District in the above criminal case, seeking an order of this court, in accordance with Fed. Rules of Appellate Procedure Rule 9(b) and 18 U.S.C §3143(b) for Bond Pending Appeal. Defendant asserts that he: 1. is not likely to flee and does not pose a danger to the safety of any person or the community, 2. that his appeal is not for the purpose of delay, 3. that his appeal raises substantial question of law or fact, including actual innocence, 4. that, if the substantial question is determined favorably on Appeal, that decision is likely to result in reversal or an order for a new trial.

### BACKGROUND

Defendant was originally informed of the Government's investigation concerning ownership of Oil Instruments and possible irregularities, which occurred in 2002. At the conclusion of an extensive investigation, Special Agent in Charge, Ms. Charlene B. Thornton, of the Federal Bureau of Investigation's Alabama office received a letter from the U.S. Department of Justice, Alice H. Martin, U.S. Attorney, Northern District of Alabama,

(1)

(Exhibit A), stating, in part, the the <u>United States Attorney's Office</u> <u>declines prosecution of Defendant due to weak and insufficient evidence</u> and that Defendant's company, RJH Company, Inc. did, in fact, own the oil in question..

Nearly 10 years later, a Grand Jury was impaneled in February 2012 and, using the same evidence as in 2002, handed down an indictment against Defendant. <u>Defendant applied for and received unsecured bond and remained on</u> <u>bail for the remainder of 2012, ALL of 2013, ALL of 2014 and ALL of 2015 until</u> <u>he self surrendered on November 30, 2015.</u> Defendant plead not guilty and filed a Motion for Judgement of Acquittal in June 2015 with the government's reply received in July 2015.

Without ruling on Defendant's Motion for Judgement of Acquittal, Defendant was found guilty in December, 2014 and sentenced on November 15, 2015. Four days later, on November 19, 2015, Defendant submitted a Pro Se Motion for Dismissal of the Indictment, <u>based on Grand Jury perjured testimony</u> <u>and false statements by AUSA Brandler,</u> (Exhibit B), since <u>appointed counsel</u> <u>would not do so although instructed to on four separate occasions via FAX's</u> <u>on</u>; June 16, 2014, June 8, 2015, July 13, 2015 and November 10, 2015.

On November 30, 2015, Defendant self surrendered presenting himself to F.C.I. Ft. Dix as required. Fifty Five days later, on January 25, 2016, the District Court held a hearing on the original Motion for Judgement of Acquittal AND the Pro Se Motion for Dismissal of the Indictment. The Motion's were denied on February 16, 2016 ruling that the perjured testimony at the Grand Jury amounted to "Harmless Error" and denied the Judgement of Acquittal Motion. Notice of Intent to Appeal was filed by current counsel on February 2, 2016. Notice of Appearance by current counsel was filed on February 18, 2016 and by the Government on March 18, 2016.

A Briefing Schedule was published by this Court stating that Defendant's Motion for Appeal to be submitted no later than June 24, 2016.

## GROUNDS FOR RELIEF

1. Defendant was convicted in the United States District Court for the Third Circuit in December 2014.

2. Defendant meets <u>ALL Four</u> of the requirements for bond as set forth in the Bail Reform Act of 1984, Pub. L. 98-473, §203, 98 Stat. 1981-1982, 18 U.S.C. §3143.

3. Defendant's current counsel has proved ineffective and Defendant has Motioned this Court to replace current counsel. Defendant asserts that he will need to be able to meet with and review files and documents relating to his case.

4. Defendant has already demonstrated his trustworthiness and compliance with the Bail Reform Act of 1984 with his successful performance on bail during the 2012-2015 period of time as well as his compliance with self-surrendering, as required, in November, 2015.

## ARGUMENT

Defendant is applying for bond pending appeal in accordance with Federal Rules of Appellate Procedure, Rule 9(b) and 18 U.S.C. §3143.

18 U.S.C. §3143 (b) reads;

"(1) Except as provided in paragraph (2), (which does NOT apply to Defendant) the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or writ of certiorari, be detained, <u>unless the judicial officer finds:</u>

(A) by clear and convincing evidence that person is NOT likely to flee or pose a danger to the safety of any other person or the community...and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in:

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with 18 U.S.C. §3142(b) or (c)...".

Defendant avers that he, indeed, does meet the four requirements set forth in paragraph (b) (1) of 18 U.S.C. 3143 and, as established in this circuit in United States v Miller, 753 F.2d 19 (1985 3rd Circuit) and in numerous additional Third Circuit rulings including; United States v Messerlain, 793, F.2d 94 (3rd Circuit Court of Appeals, June 16, 1986), United States v Daddona, 34 F.3d 164 (Third Circuit - 1999), United States v Asher, 854 F.2d 1483 (Third Circuit Court of Appeals - October 1987) and three different Supreme Court decisions including: Sawyer v Whitley, 120 L.Ed 269 60 U.S. L.W. 4657, S.Ct. 2514 (June 12, 1992), Kullman v Wilson, 477 U.S. 436, 454-55, 91 L ED, 106 S.Ct. 2616 (1986) and Murry v Carrier, 477 U.S. 478, 495, 91 L.Ed 397, 106 S. Ct. 2639 (1986), in that he is:

(1) Not likely to flee as evidenced by his bail performance during 2012-2015 and his self-surrender, all in accordance with the courts orders, as referenced in United States v Price, (1985, SD FL), 611 F Supp 502. See also: United States v Randell, (1985, CA2 NY) 761 F.2d 122, United States v Bilanzich, (1985, CA7 III) 771 F.2d 292, and Pelullo v National Union Fire Insurance Company, 2004 U.S. Dist. LEXIS 9138.

Additionally, Defendant has demonstrated his willingness to abide by bail requirements as noted in United States v Farran, (1985, SD Tex) 611 F Supp 602, and, as the defendant in United States v Hensen, (1987 WD KY) 663 F Supp 1112, (who was granted bail awaiting appeal) Defendant Harley is a long

term resident of his county of residence and has substantial business and employment interests there, has returned where and when required, has duly reported to court and self-surrendered and, finally, there is no likelihood of flight or danger to the community, the appeal will not be filed for the purposes of delay and the appeal will raise substantial question(s) which, if favorably determined, would result in a reversal or new trial.

Defendant continues to assert that the decision in <u>United States v Mechanik</u>, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), parallels his case in that, as the 1986 decision reads; "...untruthful testimony DOES create GRAVE DOUBT that the Grand Jury's decision to indict was free from the influence of such violations (Perjured testimony) |Emphasis added].

In further support, Defendant offer's Justice O'Connor's concurrence in <u>Mechanik</u>, where it was written; "[D]ismissal of the indictment IS APPROPRIATE only 'if it is established that the violation substantially influenced the Grand Jury's decision to indict' or if there is 'grave doubt' that the decision was free from the substantial influence of such violations..." (perjured testimony).    See; <u>USA v Enrique Faustino Aguilar Noriega, et al</u>, 2011 U.S. Dist. LEXIS 138439, December 1, 2011 (Motion to Dismiss granted due to perjured Grand Jury testimony).

Mr. Harley has continued to claim his actual innocence and he claims that;

1)The Grand Jury was given PERJURED testimony.

2.Mr. Harley strongly claims "actual innocence", See: <u>Sawyer v Whitley</u>, <u>Kullman v Wilson</u> and <u>Murry v Carrier</u>.

(5)

3. Defendant's Appeal will raise substantial questions regarding the facts used to convict him and further asserts that such facts will result in the reversal of his conviction and, as in <u>United States v Hartery</u>, (2005, ND NY) 351 F Supp 2d 14, (where defendant Hartery was granted bond pending appeal), Defendant Harley meets ALL of the four requirements of 18 U.S.C. §3143(b) for Bond Pending Appeal.

For example, Defendant asserts, and will demonstrate in his Appeal, that AUSA, Bruce Brandler, Esq., provided statements 'he knew were, in fact, false, in the indictment.  The perjurious statements used by the AUSA were made before the Grand Jury by Mr. Stan Dedmond and William Tranthan of Enpetro LPC, Inc. regarding ownership of approximately 10,000,000 barrels of oil.  In fact, defendant's company, RJH and Company, Inc. <u>does indeed</u>, own the oil as indicated by the <u>Assignment of Collateral</u> (Exhibit C), the <u>Oil Promissory Note</u>, (Exhibit D) the <u>Safe Keeping Receipts</u> of Attorney Christy E. Bower (who certified that the <u>Original</u> documents are secured in a safety deposit box) and, finally, the testimony of Geologist Donald C. Kesterson during the Grand Jury testimony (See: Exhibit E).

These documents clearly demonstrate that Defendant's claim of actual innocence has merit and, if successful in his Appeal, would result in a reversal of his conviction.

CONCLUSION

Accordingly, for the reasons stated above, Defendant respectfully requests this Honorable Court to issue Bond in accordance with Federal Rules of Appellate Procedure Rule 9(b) and 18 U.S.C. §3143 (b).  Defendant further avers that he meets ALL of the requirements set forth in §3143 (1)(A) and (B) and, is NOT excluded from Bond or required to remain detained in accordance with §3143 (C).

(6)

Respectfully Submitted,

Richard J. Harley
No.08867-067

## ATTESTATION

I hereby certify, under penalty of perjury under the laws of the United States of America, Title 28 U.S.C. §1746, that the foregoing Motion, including any attachments, exhibits and In Forma Pauperis, are true and correct to the best of my knowledge.

Richard J. Harley

Reg.No.: 08867-067
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640-5433

(7)

CERTIFICATE OF SERVICE

I, Richard J. Harley, hereby attest that the forgoing Defendant's Pro Se Motion to Request Bond in accordance with Federal Rules of Appellate Procedure Rule 9(b) and 18 U.S.C. §3143(b) in the Criminal Case Appellate No. 16-285 (District Court No. 3-12-cr-00224-001) for the United States Appeals Court for the Third Circuit, Eastern District of Pennsylvania, was placed into the institution legal mail system at Ft. Dix, on this 9th day of June, 2016, for mailing by prison authorities, via U.S. Mail, in accordance with the mailbox rule of Houston v Lack, 487 U.S. 266 (1988), in an envelope with first class postage affixed and addressed to the parties listed below:

Office of the Clerk

Ms. Marcia M. Waldron, Clerk
United States Third Circuit Court
Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1741

Executed this 9th day of June, 2016.

Richard J. Harley
Reg. No. 08867-067
FCI Ft. Dix
P.O. Box 2000
Joint Base MDL, NJ 08640-5433

# EXHIBIT A



U.S. Department of Justice

*Alice H. Martin*
*United States Attorney*
*Northern District of Alabama*

---

*Robert O. Posey, AUSA*
*Deputy Chief, Criminal Division*
*(205) 244-2216*
*Robert.Posey@usdoj.gov*

*Criminal Division*
*1801 Fourth Avenue North*
*Birmingham, AL 35203-2101*

*205) 244-2001*
*FAX (205) 244-2182*

May 28, 2002

Ms. Charlene B. Thornton
Special Agent in Charge
Federal Bureau of Investigation
2121 Eighth Avenue North, Rm. 1400
Birmingham, Alabama  35203

Attn:   Special Agent Vicki Davis

Re:   *United States v. Richard J. Harley*
      Agency File No.:  196B-BH-47935

Dear Ms. Thornton:

The United States Attorney's Office declines prosecution of Richard J. Harley due to weak and insufficient evidence.

Of course, this matter may be reopened if future circumstances warrant such action. This declination is not intended to resolve any civil or administrative issue which may exist now or in the future between Richard J. Harley and the Federal Bureau of Investigation, and the United States Attorney's Office.

Thank you for your work on this matter, and please call if there are any questions about this action.

Sincerely,

ALICE H. MARTIN
United States Attorney

ROBERT O. POSEY
Deputy Chief, Criminal Division

196B-BH-47935

-141

SEARCHED_____  INDEXED
SERIALIZED_____  FILED

FBI BIRMINGHAM

cc:   Special Agent Vicki Davis

# EXHIBIT B

It is important to note that AUSA Brandler made false statements to the Grand Jury pertaining to ownership of a $45,000.00 automobile. On page 7 line 8 ( See exhibit E ) Of Grand Jury Testimony.

Q...What was the money used for?

A...The money was used for what appears to be personal expenses and I'd be happy to go over some of them but the high points, $45,000.00 for an automobile.

Q...So they were personal expenses?

A...Personal expenses yes.

In AUSA Brandlers brief document 202 (foot note) July 1, 2015 page 38 of 46 he stated Mr. Fogerty testified, the 2008 Lexus was valued at $40,000 and titled in the name of RJH. ▓▓▓▓▓▓▓

Another false statement was made when AUSA Brandler on page 38 line 13-18 stated in part-documents provided by Grand Jury subpoena from Mr. Kesterson's extensive documents stated, I have seen nothing indicating ownership in oil in those documents by Mr. Harley.

1. Donald Kesterson Certified Report Page 4 para. 4 states "based on the wording of the Collateral Assignment in my opinion Enpetro must maintain these Oil Reserves on behalf of RJH and Company, Inc.

2. Re: Analysis of the Oil Reserves in Brown County Texas dated July 3, 1999 very first para. Third line pertaining to "your" Oil Promissory Note and Collateral of Assignment "from" Enpetro LPC, In. ▓▓▓▓▓▓▓

Exhibit C

# EXHIBIT C

**ENPETRO LPC, INC.**
**2243 Valwood Parkway**
**Farmers Branch, Texas 75234**
**(972)481-7734**

## ASSIGNMENT OF COLLATERAL

STATE OF TEXAS        }

COUNTY OF DALLAS      }

KNOW ALL MEN BY THESE PRESENTS:

That ENPETRO LPC, INC., a Texas corporation whose address is 2243 Valwood Parkway, Farmers Branch, Texas 75234, herein referred to as "Assignor", for a sufficient consideration paid by the Assignee herein, and subject to the further terms and conditions hereof, does hereby TRANSFER, ASSIGN AND CONVEY that certain corporate note as collateral for note numbered M20092497, issued to RJH and Company, Inc., herein referred to as "Assignee", approximately 9,524,000 barrels of oil, being approximately 9,524,000 barrels of the proven reserves of oil underlying the following Oil, Gas, and Mineral lease covering lands in Brown County, Texas to wit:

Those leases located in Brown County, Texas, described as the Williams Group, containing approximately 10,000,000 barrels of oil reserves.

The estimated reserves underlying each of the above leases have been arrived at by the use of standard reservoir engineering procedures and production histories of the producing reservoirs.

### I.

### TERM

This conveyance and all rights hereunder shall be in force concurrently with the effective dates of the note, unless on or before such date the credit enhancement collateral assigned hereby is being called on by a creditor under the provisions of part II hereof or extended by letter of agreement. In such event this conveyance shall remain in full force and effect for so long as reserves are being called on by a creditor under said part II.

### II.

### USE OF ASSIGNED RESERVES

In the event of default of any loan in which the assigned reserves have been pledged as collateral:

ASSIGNMENT OF COLLATERAL PAGE - 1

STATE OF PennSylvania
County of Monroe
I, Judith A. Miller, Do Certify This Copy
To be A True And Exact Copy of The
Original.

*Judith A. Miller*
8/10/99

Notarial Seal
Judith A. Miller, Notary Public
Smithfield Twp., Monroe County
My Commission Expires Sept. 6, 2001
Member, Pennsylvania Association of Notaries

1. The creditor shall be paid monthly from the production of wells located on the referenced lease a sum of money equal to ½ (one half) of the oil produced and sold during the preceding month which would otherwise be credited to the full leasehold working interest.

2. Assignor covenants and agrees that it will at all times during the term of this Assignment, and prior to any call being made on such collateral, maintain available for future production from the above referred to lease, or from such other lease or leases as may be added to this assignment from time to time, sufficient remaining producible reserves so that ½ (one half) of the leasehold working interest share of such reserves shall equal or exceed 9,524,000 barrels of oil at a net value after operations of USD $21.00 (twenty-one United States Dollars) per barrel for each barrel assigned herein for collateral purposes.

3. Assignor reserves the following rights with respect to the leases subject to this assignment: (a) the right at all times to sell interest in said leases to third parties so long as Assignor retains title to sufficient future producible oil reserves to comply with the terms and provisions of this assignment; (b) the right to drill, operate, produce and sell oil, gas and other hydrocarbons from the lease subject to this agreement so long as sufficient future recoverable reserves are maintained to comply with subparagraph 2 immediately above, provided however, Assignor shall always have the right to maintain sufficient production from each lease to maintain each lease in full force and effect pursuant to its terms, regardless of the future recoverable barrels of oil remaining under each lease in full force and effect pursuant its terms, regardless of the future recoverable barrels of oil remaining under each lease. Assignor covenants that should it be required to continue to produce a lease in order to maintain it in force and effect, and if such continued production would possibly default to less than the required number of barrels to satisfy the balance under default, that it will add additional lease interest to bring the collateral reserve into balance.

Assignor warrants that the oil reserves assigned hereby are free and clear of all liens and encumbrances whatsoever, that the Grantor has good title to the leasehold estates created by the referenced leases and has the right to assign these oil reserves underlying said lease.

Please note that facsimile copy of this document is to be considered as the original.

Executed this 24 day of September, 1997.

ENPETRO LPC, INC.

BY: _____
     Stan Dedmon,
     President

STATE OF PENNSYLVANIA
COUNTY OF MONROE
I, JUDITH A MILLER, DO CERTIFY
THIS COPY TO BE A TRUE AND
EXACT COPY OF THE ORIGINAL.

Judith A. Miller
8/10/99

ASSIGNMENT OF COLLATERAL PAGE - 2

Notarial Seal
Judith A. Miller, Notary Public
Smithfield Twp., Monroe County
My Commission Expires Sept. 6, 2001
Member, Pennsylvania Association of Notaries

**STATE OF TEXAS**          {

**COUNTY OF DALLAS**         {

    This instrument was acknowledged before me on <u>September 24, 1997,</u> by Stan Dedmon, President of ENPETRO LPC, INC., a Texas corporation on behalf of said corporation.



                        **SEAL**

Notary Public in and for
The State of Texas

STATE OF PENNSYLVANIA
COUNTY OF MONROE
I, JUDITH A MILLER, DO CERTIFY
THIS COPY TO be A TRUE AND EXACT
COPY OF THE ORIGINAL.

Judith A. Miller    8/10/99

Notarial Seal
Judith A. Miller, Notary Public
Smithfield Twp., Monroe County
My Commission Expires Sept. 6, 2001
Member, Pennsylvania Association of Notaries

**ASSIGNMENT OF COLLATERAL PAGE - 3**

# EXHIBIT D

# ENPETRO LPC, INC.

$200,000,000                                                                                          $200,000,000

## PROMISSORY

## OIL PRODUCTION NOTE

FOR VALUE RECEIVED, ENPETRO, LPC, INC. PROMISES TO PAY TO THE ORDER OF:
**RJH AND COMPANY, INC.**

WITH RIGHTS OF ASSIGNMENT TO:
THE SUM OF TWO HUNDRED  MILLION DOLLARS ($200,000,000)
DUE AND PAYABLE UPON DEMAND AFTER 380 DAYS FROM DATE OF ISSUE,

THIS NOTE IS SECURED BY THE ASSIGNMENT OF THE OIL RESERVES PRODUCED PURSUANT TO DIVISION ORDER FROM BML, INC. CRUDE OIL MARKETING CO. TO HAYS HILLTOP OPERATING, DATED MAY 11, 1992.  THE ASSIGNMENT AGREEMENT IS MADE A PART HEREOF FOR PROPER IDENTIFICATION.  THE PRINCIPAL AND THE ACCUMULATED INTEREST OF THIS NOTE IS FULLY PAYABLE UPON THE DUE DATE.  THE MAKER HEREOF WAIVES PRESENTATION FOR PAYMENT, NOTICE OF NON-PAYMENT, PROTEST AND DILIGENCE IN BRINGING SUIT AGAINST ANY PARTY.  IN THE EVENT OF DEFAULT THE UNDERSIGNED AGREES TO PAY ALL REASONABLE ATTORNEY FEES AND COSTS OF COLLECTION.

ENPETRO LPC, INC.

DATE ISSUED:  September 24, 1997          BY: _____

CERTIFICATE #: M20092497                  ITS: CORP. SECT/TREASURER

*ANY PLEDGE OR ASSIGNMENT REQUIRES NOTICE TO THE MAKER OF THIS NOTE*

STATE OF PENNSYLVANIA
COUNTY OF MONROE
I, JUDITH A MILLER, DO CERTIFY THIS COPY
TO BE A TRUE AND EXACT COPY OF THE ORIGINAL.

*Judith A. Miller*
8/10/99

Notarial Seal
Judith A. Miller, Notary Public
Smithfield Twp., Monroe County
My Commission Expires Sept. 6, 2001
Member, Pennsylvania Association of Notaries



# LEASE LIST AND DATA

| LEASE | LEASE # | NO. WELLS | ACRES |
|---|---|---|---|
| BUSBEE | 14272 | 16 | 158 |
| J. A. BUTLER (3 Inj) | 10455 | 9 | 171 |

(Note: some of the wells on this lease started out as V. O. King then lease was sold to Jos. A. Butler)

| | | | |
|---|---|---|---|
| HARRIS "A" (2 Inj) | 11301 | 7 | 121 |
| HARRIS "B" (shows 1 inj) | 11197 | 4 | 203 |
| TISCHLER | 11842 | 7 | 101 |

This lease was combined in 1984, joining 3 sub-leases

| | | | |
|---|---|---|---|
| WATSON | 14273 | 3 | 61 |

STATe OF PennsyLvANIA
couNTy OF MoNRoE

I, JuDiTh A MiLLer Do CeRTiFy
This CoPy To Be A TRue AND EXAcT
CoPy OF The ORiGiNAL.

*Judith A Miller*
8/10/99

Notarial Seal
Judith A. Miller, Notary Public
Smithfield Twp., Monroe County
My Commission Expires Sept. 6, 2001
Member, Pennsylvania Association of Notaries

# EXHIBIT E

# Christie E. Bower

*Attorney and Counselor at Law*

*Jay Park Plaza     P.O. Box 12*
*Marshalls Creek, Pennsylvania 18335-0012*
*570-223-9995*
*Fax  570-223-9141*
*email cebower@csrlink.net*

*402A South Third Street*
*Lehighton, Pennsylvania 18235*
*800-918-9995*

March 1, 1999

Richard J. Harley
RJH and Company, Inc.

Re:    **SAFE-KEEPING RECEIPT**

Dear Richard:

This is to verify that the following documents which you gave to me to place in safekeeping are contained in a safe deposit box rented by me in the Marshalls Creek branch of Mellon Bank:

1. Original Promissory Oil Production Note payable to RJH and Company, inc. dated September 24, 1997, certificate # M20092497 in the amount of two hundred million ($200,000,000.00) dollars;

2. Original Assignment of Collateral, dated September 24, 1997, of approximately nine million five hundred twenty-four thousand (9,524,000) barrels of oil reserves; and

3. Excerpts from geological reports.

Thank you for your consideration in this matter.

Very truly yours,

CHRISTIE E. BOWER

# Christie E. Bower

### Attorney and Counselor at Law

*5224 Milford Road, Suite 104*
*East Stroudsburg, PA 18301*
*(570) 588-0550*
*Fax (570) 588-0441*
*email: ceblaw@aplink.net*

June 13, 2006

Richard J. Harley
RJH and Company, Inc.

Re:     **SAFE-KEEPING RECEIPT**

Dear Richard:

This is to verify that the following documents which you gave to me to place in safekeeping are contained in a safe deposit box rented by me in the Marshalls Creek branch of PennStar Bank, formerly LA Bank, N.A.:

1.     Original Promissory Oil Production Note payable to RJH and Company, Inc. dated September 24, 1997, certificate #M20092497 in the amount of two hundred million ($200,000,000.00) dollars;

2.     Original Assignment of Collateral, dated September 24, 1997, of approximately nine million five hundred twenty-four thousand (9,524,000) barrels of oil reserves; and

3.     Excerpts from geological reports.

Thank you for your consideration in this matter.

Very truly yours,

*Christie E. Bower*

CHRISTIE E. BOWER

**PAGE 2** Tranthan told Harley that note was cancelled and, if he presented it to a financial institution, he would tell them that the note was worthless.

Tranthan has attempted to get the **original note** back from Harley but has been unsuccessful. ( See exhibit B)

### STATEMENT BY DONALD C. KESTERSON

**IN RE: GRAND Jury no. 10-410 pages 18, 19 Wednesday February 22, 2012 12:52 p.m.**

>Q...On the first one with Christie Bower you said you never got in touch with her?
>
>A...No, Sir, not at that time.
>
>Q...Did you try to get in touch with her?
>
>A...Not at that time sir.
>
>Q...At any time?
>
>A...Later I believe she called me or I called her just to verify that she had the
>
>Q...The original note?
>
>A. . Yes, sir
>
>Q...Did she verify that?
>
>A...Yes Sir
>
>(See exhibit C and D Attorney Christie Bower Safe Keeping Receipts-March 1 1999 and June 13, 2006)

It is important to note that AUSA Brandler made false statements to the Grand Jury pertaining to ownership of a $45,000.00 automobile. On page 7 line 8 ( See exhibit E)

>Q...What was the money used for?
>
>A...The money was used for what appears to be personal expenses and I'd be happy to go over some of them but the high points, $45,000.00 for an automobile.
>
>Q...So they were personal expenses?
>
>A...Personal expenses yes.