IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

NO. 16-1285

---

UNITED STATES OF AMERICA, APPELLEE

V.

RICHARD J. HARLEY, APPELLANT

---

BRIEF OF APPELLANT, RICHARD J. HARLEY,
AND APPENDIX, VOLUME ONE

---

ON APPEAL FROM JUDGMENT OF SENTENCE
ENTERED BY THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA ON
NOVEMBER 16, 2015 (M.D. PA. NO. 3:CR-12-00224)

---

Bruce Brandler, Esquire
*Attorney for Appellee, USA*
U.S. Attorneys Office
Wm. J. Nealon U.S. Courthouse
235 North Washington Avenue
PO Box 309
Scranton, PA 18501-0309


DATE:  September 26, 2016

Joseph A. O'Brien, Esquire
*CJA Attorney for Appellant,*
*Richard J. Harley*
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Tel No. 570-585-1200
Fax No. 570-585-5100
Email: jaob@oprlaw.com

# TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................... iii
CORPORATE DISCLOSURE STATEMENT ..................................................... 1
AND STATEMENT OF FINANCIAL INTERESTS ............................................. 1
STATEMENT OF SUBJECT MATTER JURISDICTION AND APPELLATE JURISDICTION ........ 1
STATEMENT OF RELATED CASES AND PROCEEDINGS ................................... 1
STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................... 2
STATEMENT OF THE CASE ........................................................................ 3
RELEVANT FACTS ..................................................................................... 3
PROCEDURAL HISTORY ............................................................................. 9
RULINGS PRESENTED FOR REVIEW .......................................................... 10
SUMMARY OF ARGUMENT ....................................................................... 11
ARGUMENT .............................................................................................. 11
CONCLUSION ........................................................................................... 27
COMBINED CERTIFICATIONS .................................................................... 29
CERTIFICATE OF SERVICE ........................................................................ 30

# TABLE OF CITATIONS

## Cases

*Bank of Nova Scotia v. United States*, 487 US 250, (1988) ....................................26

*Metheany v. United States*, 390 F.2d 559 (9th Cir. 1968). .........................................20

*Philadelphia Reserve Supply Company v. Nowalk and Associates, Inc.*, 846 F. Supp. 1456 (E.D. PA. 1994) ..............................................................................12

*United States v. Goldblatt*, 813 F.2d 619 (3rd Cir. 1987) .........................................13

*United States v. Goldblatt,* 813 F.2d at 624 .............................................................14

*United States v. Loney*, 959 F.2d 1332 (5th Cir. 1992) .............................................12

*United States v. Pearlstein*, 576 F.2d 531 (3rd Cir. 1978) .......................................13

*United States v. Rinaldi*, 301 F.2d 576 (2nd Cir. 1962)...........................................22

*United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996) ..............................................12

*United States v. Starnes*, 583 F.3d 196 (3rd Cir. 2009)...........................................13

*United States v. Starr*, 816 F.2d 94 (2d Cir. 1987)...................................................13

*United States v. Stavroulakis*, 952 F.2d 686 (2nd Cir. 1992) ....................................13

*United States vs. Marx,* 635 F.2d 436, (5th Cir. 1981) ..............................................23

*United States vs. McKenzie*, 446 F.2d, 949, 954 (6th Cir. 1971)..............................23

*United States vs. Vosburg*, 602 F.3d 512 (3d Cir. 2010) .........................................12

*United States vs. Wise,* 515 F.3d 207 (3d Cir. 2008)................................................11

*United vs. Jackson*, 617 F. Supp 2d 316 (M.D. Pa 2008) ........................................24

## Statutes

18 U.S.C. § 3231 ..........................................................................................................1

28 U.S.C. §1291 ...........................................................................................................1

8A. C.J.S. Bankruptcy §2 at p. 18 (Wes. 1988 AD) .................................................19

## CORPORATE DISCLOSURE STATEMENT
## AND STATEMENT OF FINANCIAL INTERESTS

Appellant is not a corporation and, therefore, does not have a parent, subsidiaries or affiliates that issue shares to the public.

Neither Appellant nor Appellant's counsel have any financial interest in this appeal.

## STATEMENT OF SUBJECT MATTER JURISDICTION AND APPELLATE JURISDICTION

i.        The jurisdiction of the United States District Court for the Middle District of Pennsylvania was based on 18 U.S.C. §3231.

ii.     Richard J. Harley ("Harley") was convicted on December 16, 2014. Harley filed a Motion for Judgment of Acquittal and for a New Trial on December 30, 2014. Harley was sentenced on November 16, 2015. On February 1, 2016, the District Court denied Harley's Motion for Judgment of Acquittal and for a New Trial. A timely Notice of Appeal was filed on February 8, 2016. Jurisdiction of the Court of Appeals is based on 28 U.S.C. §1291.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

None.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.   Did the trial court error in failing to conclude that the evidence at trial was insufficient to sustain Harley's conviction on the wire fraud charges contained in counts 1-15 of the Indictment.

2.   Did the trial court error in failing to conclude that the evidence at trial was insufficient to sustain Harley's conviction on the bank fraud charges contained in count 23 of the Indictment.

3.   Did the trial court error in failing to conclude that the evidence at trial was insufficient to sustain Harley's conviction on the bankruptcy fraud charges contained in counts 16 and 17 of the Indictment.

4.   Did the trial court error in failing to conclude that the evidence at trial was insufficient to sustain Harley's conviction on the false statement charges contained in counts 18 and 22 of the Indictment.

5.   Did the trial court error in failing to grant a new trial due to the presentation before the jury of evidence of Harley's prior involvement with the criminal justice system.

6.   Did the trial court error in denying Harley's Motion to suppress evidence seized in the search of his home.

7.   Did the trial court error in failing to grant Harley's pro se Motion to Dismiss the Indictment and set aside the verdict based on perjure testimony during

the grand jury proceedings.

## STATEMENT OF THE CASE

## RELEVANT FACTS

The Indictment against Harley was reported on August 30, 2012. The Indictment contained twenty-three (23) counts including wire fraud, bankruptcy fraud, and false statements in connection with bankruptcy and bank fraud. The basis for the charges were three (3) alleged schemes to defraud in which Harley allegedly participated. (Indictment, App. p. 1A-22A; DDE1 at p. 1-22). Harley was convicted by a jury on all 23 counts on December 16, 2014.

The first alleged scheme to defraud set forth in the Indictment involved the ownership of oil in Texas. The Indictment alleged that Harley defrauded individuals and financial institutions by claiming that his company, RJH & Company ("RJH"), owned over one billion dollars in oil located in Texas. The Indictment further alleged that Harley solicited loans and investments from individuals and financial institutions based on the claim of owning the Texas oil. *Id*.

The second alleged scheme to defraud set forth in the Indictment involved the ownership of bank instruments. The Indictment charged Harley falsely claimed that RJH owned Federal Reserve Bank instruments totaling more than one hundred

billion dollars and that he solicited financial and lending institutions to negotiate, deposit, manage and loan money against those funds. *Id*.

The third alleged scheme to defraud set forth in the Indictment involved bankruptcy proceedings filed by Harley and RJH. The Indictment alleged that Harley attempted to defraud creditors by filing false and fraudulent bankruptcy petitions in the United State Bankruptcy Court. *Id*.

Counts 1-5 of the Indictment involved the first scheme to defraud ie ownership of oil in Texas. The alleged victim of counts 1-5 was Marshal Silverstein ("Silverstein"). Silverstein is an experienced businessman with two (2) college degrees. (Tr. December 5, 2014, App. p. 528A-529A; DDE #178 at p. 146-147) (Tr. December 8, 2014, App. p. 601A; DDE #191 at p. 11). Henry Cohen ("Cohen") recommended Harley to Silverstein. Silverstein relied on Cohen in doing an independent investigation of Harley. (Tr. December 8, 2014, App. p. 743A; DDE #191 at p. 153; December 12, 2014, App. p. 1245A; DDE #193 at p. 14). He did business with Harley for three (3) years. (Tr. December 5, 2014, App. p. 539A; DDE #178 at p. 157). Silverstein's investments with Harley involve the Texas oil assets. He made all transfers to Harley voluntarily with the understanding that there was business risk involved. (Tr. December 8, 2014, App. p. 605A-607A; DDE #191 at p. 15-17). He continued to make transfers over the three (3) year period even though he was not receiving his promised return. (Tr. December 8,

4

2014 App. p. 608A-609A; DDE #191 at p. 18-19). The specific charges contained in Counts 1-5 relate to five (5) wire transfers made by Silverstein to Harley's company's account with Merrill Lynch. The transfers total $63,500.00 and were made between July 24, 2008 and March 24, 2009. (Indictment, App. p. 1A-22A; DDE #1 at p.1-22).

Count 6 of the Indictment also involved the alleged oil ownership scheme. Maury Schuford ("Schuford") was the alleged victim. Schuford is a retired heavy truck driver with the L.A. School System. (Tr. December 8, 2014, App. p. 667A; DDE #191 at p. 77). He was seeking investment opportunities and was recommended to Harley by a friend. (Tr. December 8, 2014, App. p. 668A-669A; DDE #191 at p. 78-79). He invested with Harley with the understanding that he would not get any return if there was no drilling on the oil property or if no oil was produced on the property. (Tr. December 8, 2014, App. p. 682A-683A; DDE #191 at p. 92-93). The specifics of Count 6 are a wire transfer from Schuford's Hughes Aircraft Credit Union account to Harley's company's account at Merrill Lynch. The transfer was in the amount of $10,000.00 and was made on December 20, 2007. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22).

Counts 7-10 also involved the alleged oil ownership scheme. The alleged victim was Malcolm Cassell ("Cassell"). Cassell was a CEO of a technology company in California. (Tr. December 8, 2014, App. p. 681A-685A; DDE #191 at

p. 91-95). He was introduced to Harley by a friend. (Tr. December 8, 2014, App. p. 686A-687A; DDE #191 at p. 96-97). He made an advance payment of $2,000.00 just to meet with Harley. This payment was not the subject of any charge against Harley. (Tr. December 8, 2014, App. p. 688A, 749A; DDE #191 at p. 98, 159). Cassell invested a total of $8,000.00 in Harley's oil investments, but declined to participate in the investing of the Federal Reserve checks. (Tr. December 8, 2014, App. p. 696A-697A; DDE #191 at p. 106-107). The specifics of the Cassell charges are wire transfers from Cassell's Citi Bank account to Harley's company's Merrill Lynch account on December 16, 2008 in the amount of $3,000.00 and December 22, 2008 in the amount of $5,000.00. In addition, the wire fraud charges concerning Cassell also relate to emails from Harley's company to Cassell dated April 28, 2009 and May 16, 2009. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22).

Count 11 involved Irene Randall ("Randall"). Randall was involved in the commercial financing business. Specifically, she sought financing projects for lenders. (Tr. December 9, 2014, App. p. 922A; DDE #192 at p. 110). The wire fraud charge in Count 11 relates to a corporate profile emailed by Harley to Randall on May 4, 2010. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22). The corporate profile did not reflect any judgments against RJH. (Tr. December 9,

2014, App. p. 923A-926A; DDE #192 at p. 111-114). Randall declined to invest

with Harley. (Tr. December 9, 2014, App. p. 926A; DDE #192 at p. 114).

Count 12 involved the second alleged scheme to defraud ie the ownership of

Federal Reserve Bank instruments. The alleged victim was Merrill Lynch. Harley

emailed two (2) $500,000,000.00 Federal Reserve checks and documentation to

Merrill Lynch on April 20, 2009. Merrill Lynch representative Andrew

Heckenberger ("Heckenberger") testified that Harley had requested that Merrill

Lynch deposit the Federal Reserve checks. He did not submit an endorsement, a

deposit slip, or an original of the checks. Merrill Lynch did not accept the checks

for deposit.[1](Transcript, Dec. 4, 2014, p. 339A-346A).

Count 13 involved the Federal Reserve Bank checks. The alleged victim was

State Street Bank. Harley emailed a corporate profile together with safe keeping

receipts and the two (2) Federal Reserve checks to State Street Bank on April 3,

2012. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22). (Tr. December 5, 2014,

App. p. 395A-396A; DDE #178 at p. 13-14). On April 27, 2012, State Street Bank

informed Harley that it would not accept the deposit. (Tr. December 5, 2014, App.

p. 400A-401A; DDE #178 at p. 18-19).

---

[1] The testimony of Mr. Heckenberger occurred on December 4, 2014. The transcript of proceedings provided to defense counsel for that date did not have numbered pages. Therefore, we are unable to submit a transcript page number for Heckenberger.

Count 14 involved the Federal Reserve Bank checks. The alleged victim was LPL Financial. Harley emailed the two (2) Federal Reserve checks to LPL Financial on April 28, 2009. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22). LPL Financial declined the deposit.

Count 15 involved the Federal Reserve Bank checks. Harley allegedly sent four (4) emails to the New York Federal Reserve Bank dated April 18, 2011. The emails contained images of two (2) Federal Reserve checks, supporting documentation, and cash payment demand for $1 billion. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22). The Federal Reserve Bank of New York denied Harley's request for cash payment.

Counts 16 and 17 of the Indictment charged Harley with bankruptcy fraud. Specifically, in Count 16, United States charged that Harley filed a Chapter 11 Petition on November 22, 2010 in the name of RJH & Company, Inc. with the intent to defraud creditors. In Count 17, the Government charged that Harley filed a Chapter 11 bankruptcy in the name of RJH & Company on March 24, 2011 with the intent to defraud creditors. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22).

Counts 18-22 charged Harley with making false statements in relation to the bankruptcies he filed on behalf of this company, and in a bankruptcy proceeding he filed on his own behalf on May 29, 2012. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22).

8

In Count 23, the Government charged Harley with bank fraud occurring between April 2009 and April 2012. The charge included the allegation that Harley attempted to defraud the Federal Reserve Bank of New York by attempting to negotiate and deposit the two (2) $500,000,000.00 Federal Reserve checks. (Indictment, App. p. 1A-22A; DDE #1 at p. 1-22).

## PROCEDURAL HISTORY

A Grand Jury sitting in the Middle District of Pennsylvania reported a twenty-three (23) count Indictment against Richard Harley ("Harley") on August 30, 2012.

Harley entered a plea of not guilty on October 16, 2012 and was granted pre-trial release on a One Hundred Thousand Dollar ($100,000.00) unsecured bond.

On September 16, 2013, Harley filed a Pre-Trial Motion to Dismiss, a Motion to Suppress Evidence, and a Motion for a Bill of Particulars. By Orders dated January 27, 2014 and April 10, 2014, the Court denied all three (3) Motions.

The case was tried before the Honorable A. Richard Caputo and a jury on December 3, 4, 5, 8, 9, 10, 11, 12, and 15, 2014.

On December 15, 2014 Harley made a Motion for Judgment of Acquittal on the Record. The Motion was denied by the Court.

On December 16, 2014, the jury entered a guilty verdict on all twenty-three (23) counts.

On December 30, 2014, Harley filed a Motion for Judgment of Acquittal and/or a New Trial.

Harley was sentenced on November 16, 2015 to a term of 144 months.

Harley filed a pro se Motion to Dismiss the Indictment on November 19, 2015.

On February 2, 2016, the District Court denied Harley's Motion for Judgment of Acquittal and for a New Trial and his pro se Motion to Dismiss the Indictment.

Harley filed a Notice of Appeal to the Third Circuit Court of Appeals on February 8, 2016.

## RULINGS PRESENTED FOR REVIEW

Harley seeks review of the District Court's Order of January 27, 2014 denying his Motion to Suppress as well as review of the District Court's Order of February 2, 2016 denying his Motion for Judgment of Acquittal, his Motion for a New Trial and his pro se Motion to Dismiss the Indictment.

## SUMMARY OF ARGUMENT

Harley submits that the evidence was insufficient to sustain his conviction on any of the Counts contained in the Indictment and on which he was convicted by the Jury. Harley requests therefore that his conviction be vacated and the matter be remanded to the District Court for a judgment of acquittal of all counts.

In the alternative, Harley requests that he be granted a new trial on the grounds that the jury was allowed to consider evidence of his prior involvement with the criminal justice system and also on the grounds that the Court did not make appropriate findings in denying his Motion to Suppress.

Finally, Harley requests that the Court grant his Motion to Dismiss the Indictment and set aside the verdict. The grounds for this Motion is the introduction of perjured testimony before the grand jury on a very material matter.

## ARGUMENT

The first four sections of this argument present a challenge by Harley to the sufficiency of the evidence at trial. In a sufficiency of the evidence challenge to the verdict of a jury, the Court of Appeals considers the evidence in a light most favorable to the verdict and asks whether a reasonable jury could have found the contested elements beyond a reasonable doubt. *United States vs. Wise,* 515 F.3d 207, 214 (3d Cir. 2008). When the evidence is circumstantial such as in this case,

the jury is entitled to draw reasonable inferences therefrom. *United States vs.*

*Vosburg*, 602 F.3d 512, 537 (3d Cir. 2010).

1.

**The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a Verdict of Not Guilty on the Wire Fraud Charges Contained in Counts 1-15 of the Indictment.**

Harley was found guilty of Counts 1-15 of the Indictment. These Counts

charged him of wire fraud in violation of 18 U.S.C. 1343 which provides in part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

To prove wire fraud, the Government must prove beyond a reasonable

doubt: (1) Defendant knowingly and willingly participated in a scheme or artifice

to defraud with the specific intent to defraud; and (2) the use of the mail or

interstate wire communications in furtherance of the scheme. *United States v.*

*Sawyer*, 85 F.3d 713, 722 (1st Cir. 1996). *United States v. Loney*, 959 F.2d 1332,

1337-38 (5th Cir. 1992);; *Philadelphia Reserve Supply Company v. Nowalk and*

*Associates, Inc.*, 846 F. Supp. 1456, 1470-71 (E.D. PA. 1994).

The term "knowingly" requires the Government to prove that a criminal

defendant had knowledge of the facts that constitute the facts. *United States v.*

12

*Starnes*, 583 F.3d 196, 210 (3rd Cir. 2009). When used in conjunction with "knowingly", the term "willfully" requires the Government to prove that the defendant acted not merely voluntarily, but that his conduct was unlawful and that he intended to do something the law forbids. *Id.*

A scheme to defraud is defined to include any plan, pattern, or course of action including false and fraudulent pretenses and misrepresentations intended to deceive others in order to obtain something of value. *United States v. Goldblatt*, 813 F.2d 619, 624 (3rd Cir. 1987). A scheme to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension. *United States v. Pearlstein*, 576 F.2d 531, 535 (3rd Cir. 1978). A scheme to defraud requires that a defendant contemplate some harm to the victim. *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987).

Fraud is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community. *Id.* Essential to a conviction under a scheme to defraud is a showing of fraudulent intent, i.e. an intent to deceive and an intent to cause actual harm. *United States v. Stavroulakis*, 952 F.2d 686, 694 (2nd Cir. 1992). It is not necessary for the Government to prove

that the intended victim was actually defrauded or that the Defendant personally benefited from the scheme. *United States v. Goldblatt,* 813 F.2d at 624-625.

Harley submits that the evidence presented by the United States at trial is wholly inconsistent with a scheme to defraud. To the contrary, the Government did not meet its burden by presenting substantial evidence that Harley knew that the Texas oil investment or the Federal Reserve checks were fraudulent or that he intended to make any misrepresentation to the companies and individuals to whom he presented these investment opportunities.

Harley did not testify at trial. The United States did not present, through other witnesses, any admissions made by Harley which would indicate that he knew the Federal Reserve checks were fraudulent and intended to defraud those to whom he presented them. Indeed, the only evidence of what Harley truly believed about these investments came from the testimony of Edward Siegel of State Street Bank and Richard Jones of the Federal Reserve Bank. Both of these individuals who spoke and corresponded with Harley about these matters, testified that Harley believed that the Federal Reserve checks were legitimate business opportunities. (Tr. December 5, 2014, App. p. 402A; DDE #178 at p. 20) (Siegel); (Tr. December 3, 2014, App. p. 149A-157A; DDE #185 at p. 49-57 (Jones).

In its opinion, the Trial Judge pointed to evidence from which, I believed Harley could have concluded that the Federal Reserve checks were fraudulent.

14

(Memorandum, App 45A-47A; DDE 230 p. 5-7). As indicated above, however, the only evidence on point, however, ie., the testimony of Jones and Siegel indicates that he reached the opposite conclusion that the checks were legitimate. Harley submits that the record does not contain substantial evidence that he knew the Federal Reserve checks were fraudulent.

As to the oil investment, the Trial Court concluded that the $1,000,000,000.00 amount of the oil investment, the fact that Harley did not call the investment, and the testimony of oil geologist, Donald Kesterson all established that he knew the investment was fraudulent (Memorandum, App. 44A-45A; DDE 230 p. 4-5).

As to the $1,000,000,000.00 amount, the record contains various reports from Donald Kesterson to Harley between 1999 and 2008 that indicate a fluctuating value of the oil investment between approximately $250,000,000.00 and $1,000,000,000.00. (Govt. Exhibits, 27.6, 32.6, 32.8, 32.12, 32.64, 32.15, 30.16 and 32.17, App. p. 376-2468A). In fact, Kesterson's most recent report to Harley dated February 20, 2008, estimated the value of the oil investment to be $1,021,839,073.69 (Govt. Exhibits 32.11, App. 2466-2468).

Moreover, the fact that Harley who had limited income did not call the note does not establish that he knew it was worthless. Harley explained that he didn't think that Enpetro, the maker of the note, had the money to pay it and that he

otherwise prefer to hold rather than to cash in the asset. (Memorandum, App 44A; Document 230 p. 4). Thus, drawing an inference of fraud, from this evidence would be speculative and improper.

Finally, the Court pointed to the fact that Harley had inaccurately informed Kesterson that the oil interest had been in production in 1999 when, in fact, the last production had occurred in 1993. (Memorandum, App. p. 45A; DDE 230 p.5). Kesterson did not rely on this information and determined the 1993 date from the reports of the Texas Railroad Commission. (TR. Dec. 12, 2014, App. 1315-1317; DDC 181, 84-86). The 1993 production date was used for purposes of his reports. (Govt. Exhibits, 27.6, 32.6, 32.8, 32.12, 32.14, 32.15, 32.16, 32.17, App. 2376-2468).

As indicated above, the crime of wire fraud requires the Government to prove that the defendant acted knowingly, willfully, and with the intent to defraud others. The record in this case, contains reports from Kesterson that there was as much as $1,000,000,000.00 in oil reserves in the property involved. (Govt. Exhibits, 276, 326, 328, 3212, 3214, 3215, 3216 and 3217, App. 23.76A-2468A). In addition, the record contains a Promissory Note from Enpetro and an Assignment of Collateral evidencing the oil investment (Govt. Exhibit 27.8 and 27.5 App. 2371A-2375A and 2381A-2385A). The record, however, contains no evidence that Harley knew the oil investment opportunities were fraudulent or that

he willfully intended to defraud others. Thus, the Court should vacate his

conviction on those counts.

2.

<u>The Court Should Grant Harley's Motion for Judgment of Acquittal and
Enter a Verdict of Not Guilty on the Bank Fraud Charges Contained in Count 23 of
the Indictment</u>

The jury also found Harley guilty of one count of bank fraud in violation of

18 U.S.C. 1344 which provides in pertinent part as follows:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice -
-

(1) to defraud a financial institution; or

(2) to obtain any of the  moneys, funds, credits, assets, securities, or other
property owned by, or under the custody or control of, a financial institution, by
means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30
years, or both."

As is clear from the statutory language, the bank fraud statute also requires

the Government to prove that a defendant knowingly engaged in a scheme to

defraud. The scheme to defraud alleged in Count 23 of the Indictment involves the

two (2) $500,000,000.00 Federal Reserve checks. As set forth above, the evidence

presented by the Government at trial does not establish that Harley knew these

checks to be fraudulent. Rather, the only evidence presented on the issue was that

he believed they were legitimate. Thus, Harley submits that the evidence was

insufficient to sustain his conviction on the bank fraud charge and that the Court

should enter a Judgment of Acquittal on that charge.

3.

### The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a Verdict of Not Guilty on the Bankruptcy Fraud Charges Contained in Counts 16 and 17 of the Indictment

Harley was also convicted of two (2) counts of bankruptcy fraud prohibited

by 18 U.S.C. 157, which provides in pertinent part as follows:

"A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so - -

(1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;

(2) files a document in a proceeding under title 11; or

(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relations to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both.

The United States contends that the evidence of Harley's bankruptcy filings

on behalf of his company on November 22, 2010 and March 24, 2011 constitute a

scheme to defraud his creditors. Harley submits that the evidence was insufficient

to establish these charges.

Article 1, Section 8, Clause 4 of the United States Constitution authorizes

the Congress to establish uniform laws on the subject of bankruptcies throughout

18

the United States. Congress has availed itself of this opportunity for the following

reasons: (a) prevent creditors from taking unfair advantage of a debtor; (b) suspend

the normal operation of rights and obligations between the debtor and his creditors;

(c) relieve the debtor from the burden of indebtedness; (d) provide him with a fresh

start; and (e) equitably distribute the debtor's assets among his creditors. 8A. C.J.S.

Bankruptcy §2 at page 18 (West 1988 ed.).

Count 16 and 17 of the Indictment arise out of bankruptcy petitions filed by

Harley on behalf of RJH Capital and Company, Inc. on November 22, 2010 and

March 24, 2012 (Indictment, App. p. 14A-15A; DDE 1 p. 14-15). The Trial Court

pointed out that these petitions were filed immediately prior to legal proceedings in

which Marshall Silverstein was attempting to obtain a judgment against Harley and

that Harley, in an effort to avoid these judgments, was attempting to avail himself

of the automatic stay provisions of the Bankruptcy Code (Memorandum, App. p.

48-49; DDE 230 p. 8-9). The Court concluded that in availing himself of the

automatic stay provisions, Harley intended to defraud Silverstein.

Harley submits that his constitutional and statutory right to file a bankruptcy

petition, includes the right to utilize the automatic stay provision and in so doing to

suspend the operations of creditors against him. 8A. C.J.S. Bankruptcy §2 at p. 18

(Wes. 1988 AD). Thus, Harley's action are protected by law and not fraudulent.

The filing of these bankruptcy petitions did not, therefore, constitute substantial

evidence of fraudulent intent sufficient to sustain his convictions under Counts 16

and 17 of Indictment.

4.

<u>The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a
Verdict of Not Guilty on the False Statement Charges Contained in Counts 18-22
of the Indictment</u>

Harley was also convicted of five (5) counts of making false statements in a

bankruptcy petition in violation of 18 U.S.C. 152(3), which provides in pertinent

part as follows:

"A person who –

(3) knowingly and fraudulently makes a false declaration, certificate,
verification, or statement under penalty of perjury as permitted under section 1746
of title 28, in or in relation to any case under title 11;

shall be fined under this title, imprisoned not more than 5 years, or both."

The five (5) essential elements of this offense are: (1) the existence of

bankruptcy proceedings; (2) a statement made therein or in relation thereto; (3) the

statement was as to a material fact; (4) the statement was false; and (5) the

statement was knowingly and fraudulently false. *Metheany v. United States*, 390

F.2d 559, 561 (9th Cir. 1968).

The alleged false statements which formed the basis of these charges are as

follows: (1) Harley submitted a schedule of assets of RJH stating RJH had assets

totaling $765 million, including approximately 10 million barrels of proven

20

reserves valued at $700 million, when in truth and in fact, as Harley well knew, such statements were false; (2) Harley submitted a list of creditors which omitted Victim #1, the SEC, and the United States when, in truth and in fact, as Harley well knew, Victim #1, the SEC, and the United States were creditors; (3) Harley submitted a statement of financial affairs which falsely stated that Harley had no businesses in which he was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity, either full or part-time, within six years immediately preceding the commencement of the bankruptcy filing, when, in truth and in fact, as Harley well knew, he was the Chief Executive Officer of RJH during that time period; and (4) Harley failed to list all personal property owned by him and his wife, including art objects (Indictment App. p. 15A-20A DDE 1 p. 15-20).

Harley is not an attorney and he filed the bankruptcy petitions without legal counsel. Obviously, there were some mistakes made in the information provided on the bankruptcy petitions. The record, however, contains no evidence that the mistakes were knowingly or fraudulently made. Harley submits, therefore, that the evidence is also insufficient on these counts to sustain the jury's verdict.

5.

The Court Should Grant a New Trial to Harley due to the
Presentation before the Jury of Evidence of his
Prior Involvement with the Criminal Justice System

On December 9, 2014, during the testimony of Caroline Musloski, a paralegal specialist employed by the United States Attorney, there was a document presented before the jury and admitted into evidence that referred to a previous criminal proceeding involving Mr. Harley. Neither defense counsel, the prosecution, nor the Court noticed the matter at the time it was presented to the jury. Subsequently, before trial began the next day on December 10, 2014, defense counsel brought the matter to the attention of the Court. (Tr. December 10, 2014, App. p. 997A, 1040A-1041A; DDE #179 at p. 4, 47-48). The document was appropriately redacted before it was again given to the jury and Defendant, through defense counsel, declined to request a curative instruction. *Id*; (Tr. December 15, 2014, App. p. 1407A; DDE #194 at p. 32).

Harley did not take the stand at trial. Federal Rule of Evidence 404 does not provide any basis to support the admission of the evidence erroneously brought before the jury. The crimes charged in this case all contain an element of fraudulent intent on Harley's behalf. In light of the above, Harley submits that the evidence of his prior involvement in the Criminal Justice System was so prejudicial in the context of this case that the Court should award a new trial in the interest of justice. *United States v. Rinaldi*, 301 F.2d 576, 578 (2nd Cir. 1962).

6.

<u>The Court Should Remand the Matter to the District Court for further findings with respect to the District Court's denial of Harley's Motion to Suppress.</u>

22

The United States performed a search of Harley's home on February 29, 2012. Vincent Browning, the FBI agent who supervised the search, testified at trial; Transcript, Dec. 11-12, 2014, App. p. 1059A-1211A.; DDE 179 p. 66-102; DDE 180 p. 1-122). Many of the items and documents seized during the search, were discussed at trial or introduced into evidence at trial. *Id.*

Rule 41 of the Federal Rules of Criminal Procedure requires that an officer execute in a search warrant must give a copy of the warrant to the person whose premises was being searched. (F. R. Crim. Pro. 41 (f.)(1)(C). The issue at the suppression hearing is whether the United States gave Harley a unsigned or a signed version of the search warrant (Memorandum, App. p. 24A-27A; DDE 72 1-4.) The Court declined to decide the issue including that the Suppression Motion would have been denied at any event because there was no dispute that a warrant had in fact been issued. *Id.*

In *United States vs. Marx,* 635 F.2d 436, (5th Cir. 1981). The Court held that violations of 41d including the failure to provide a copy of the warrant at the time of search are "essentially ministerial in nature and note that a Motion to Suppress should be granted only when the Defendant demonstrates legal prejudice or that noncompliance with the rule was intentionally in bad faith. *Id. at 441. United States vs. McKenzie*, 446 F.2d, 949, 954 (6th Cir. 1971). In the present matter, the District Court did not make any finding as to prejudice or bad faith. Rather, it

23

denied the motion on the grounds that the failure to provide a copy of a warrant at the time of search was not grounds for suppression matters if in fact the warrant had been issued.

In addition, the Court cited the case of *United vs. Jackson*, 617 F. Supp 2d 316, 320 (M.D. Pa 2008), in its opinion denying its Motion to Suppress. In *Jackson* the Middle District Court pointed out the factors that can be considered to resolve a dispute as to whether a search warrant had in fact been issued before a search. These factors include: (1) an indication on the warrant of the date before which the search must be conducted, (2) the presence of a case number indicating that the warrant has been filed, (3) the presence of the issuing authority's initials or other imprimaturs of judicial authority on the warrant, and (4) an in-person acknowledgment by the issuing authority to the affiant that probable cause has been found. *Id at 320.* The Trial Court however, did not make any findings with respect to these factors. *Id.*

Harley submits therefore, that the Court should vacate his conviction and grant him a new trial or in the alternative, remand the matter to the District Court for further findings on the suppression issue.

7.

<u>The Court Should Award a New Trial Due to the Inconsistent Evidence Provided by the United States before the Grand Jury and at Trial Concerning the Location of the Original Oil Promissory Note.</u>

24

Harley filed a pro se Motion to Dismiss the Indictment and set aside the

verdict. (DDE #218). The basis for the Motion was Harley's claim that the United

States introduced Perjured testimony before the grand jury. *Id.* Specifically Harley

alleged that the grand jury was told that Harley had not been provided with an

original of the Enpetro Promissory Note which evidenced the oil investment which

was the subject of Counts 1 through 10 of the Indictment. *Id*. Harley's Motion was

not objected to by the United States. The Court considered the Motion and denied

it along with Harley's Motion for Judgment of Acquittal and Motion for a New

Trial. (Memorandum, App 53A-59A; DDE #230 13-19).

The testimony before the grand jury was as follows:  Stanley Dedmond, the

owner of Enpetro testified that he never sent an original of the promissory note to

anyone (Memorandum, App 14; DDE 230 14). William Trantham, an attorney for

Enpetro who signed the promissory note testified that the original note was not sent

to Harley. *Id.*

The evidence the United may have known this testimony to be false included

a statement by Dedmond to the FBI that he sent the note to Harley. *Id*. In addition

Vince Browning, an FBI agent, testified at trial that he had been part of the search

of Harley's home on August 29, 2002 and that he found more than one original

Enpetro note during the search. (Transcript Doc. 11 2014; App 1115A-1172A; DE #180 23A-77A).

A court may dismiss an indictment for errors in grand jury proceedings "if it is established that the violation substantially influenced the grand jury's desire to indict or if there is a grave doubt that the grand jury's decision to indict was free from substantial influence of such violations. *Bank of Nova Scotia v. United States*, 487 US 250, 256 (1988). Once there is a jury verdict dismissal based on grand jury errors is justified only where the error rendered the prosecution fundamentally unfair. *Id* at 257.

In considering the issue the Court should take special note of the significance of whether Harley had the original Enpetro Note. The wire fraud charges contained in Courts 1 through 10 of the Indictment involved the oil investment. (Indictment, App 1A-12A; DDE 1 1-12). The United States alleged that the intent to defraud element of the wire fraud charges was established by the fact that Harley knew the oil investment was fraudulent. Harley's defense to these charges involved the contention that he believed the investment to be legitimate. Whether Harley possessed the note, which evidenced the oil investment, is very relevant in the determination of whether he believed the investment legitimate or fraudulent The grand jury apparently heard false testimony as to whether Harley had an original note. The falsity of the testimony was known by the United States

no later than the date of the search; August 29, 2012, which was the day before the grand jury reported the indictment. The record contains no evidence that the United States informed the grand jury before it reported the indictment that Harley had an original of the note.

Based on the above Harley submits that the test established in <u>Nova Scotia</u> has been met in this case. The alleged perjured testimony was highly probative on an essential element of the crime charged. Clearly it could have influenced the grand jury's decision. As such the Court should grant the Motion to Dismiss the Indictment.

## CONCLUSION

Based on the foregoing, Harley requests that the court vacate the Judgment of sentence entered by the District Court, on November 16, 2015 and remand the matter back to the District Court for the entry of a Judgment of Acquittal. The basis for this request is that the evidence was insufficient to support the jury's guilty verdict. In the alternative, Harley requests that the Court vacate the Judgment of Sentence and remand the matter back to the District Court for a new trial. The basis for this request is the District Courts erroneous denial of his Motion to Suppress, the Courts erroneous admission into evidence of evidence of his prior involvement

with the criminal justice system and the fact that his Indictment was based on the

perjured testimony.

Respectfully submitted,

/s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire
*CJA Attorney for Appellant*
Attorney I.D. #22103
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Tel.:  570-585-1200
Fax:  570-585-5100
Email: jaob@oprlaw.com

## COMBINED CERTIFICATIONS

I, JOSEPH A. O'BRIEN, ESQUIRE, of Oliver, Price & Rhodes, hereby certify the following:

1. <u>Bar Membership</u>:  I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

2. <u>Word Count</u>:  I hereby certify that the BRIEF OF APPELLANT, RICHARD J. HARLEY contains a word count of 6,955 words.

3. <u>Identical Compliance</u>:  I hereby certify that the E-Brief and Hard Copy of Appellant's Brief are Identical.

4. <u>Virus Check</u>:  I hereby certify that a Virus Check was performed on Appellant's Brief using Webroot SecureAnywhere Endpoint Protection V.9.09.72 software, and no virus was detected.

/s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire
*CJA Appointed Counsel for Appellant*

### CERTIFICATE OF SERVICE

I, **JOSEPH A. O'BRIEN, ESQUIRE**, of Oliver, Price & Rhodes, hereby certify

that on the 26th day of September, 2016, I served a true and correct copy of the

foregoing BRIEF AND VOLUME 1 OF THE APPENDIX OF APPELLANT, RICHARD J.

HARLEY both electronically and in hard copy formats, pursuant to the Federal

Rules of Appellate Procedure and Third Circuit Local Appellate Rules, as follows:

Marcia M. Waldron, Clerk
U.S. Court Appeals for the 3rd Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Bruce Brandler, Esquire
Office of the U.S. Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

/s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire

P:\O'BRIEN, JOE\USA\Harley, Richard\Appeal\Pleadings\Appellant Brief 2016-9-26.docx